IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| KEVIN MARK TAYLOR, | Cause No. CV 14-52-GF-DLC-JTJ |
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| LEROY KIRKEGARD; ATTORNEY GENERAL OF THE STATE OF MONTANA, | |
| Respondents. | |

This case comes before the Court on Petitioner Kevin Mark Taylor's

application for writ of habeas corpus under 28 U.S.C. § 2254. Taylor is a state

prisoner proceeding pro se.

## I.    Procedural History

### a.  Trial

In March 2008, the State of Montana charged Taylor with Count I, sexual

intercourse without consent; Count II, sexual intercourse without consent; and,

Count III, misdemeanor sexual assault. The charges all stemmed from Taylor's

employment as a massage therapist at The Peak Fitness Center in Great Falls,

Montana.

Following a trial in the Eighth Judicial District, Cascade County, in January

2009, a jury found Taylor guilty of Counts I and III and not guilty on Count II.

The court sentenced Taylor to 30 years MSP with 5 years suspended on the felony and to a consecutive 6-month sentence for the misdemeanor.

### b. Direct Appeal

Following his conviction, Taylor filed a direct appeal. He raised four issues: (1) whether the failure of the state law enforcement to conduct a rape kit examination warranted reversal under the plain error doctrine; (2) whether trial counsel was ineffective for failing to seek dismissal of Count I or, alternatively, seek a missing evidence instruction; (3) whether the trial court erred in denying Taylor's motion for a mistrial when a spectator demonstration occurred; (4) whether the trial court erred in denying Taylor's motion to sever Taylor's three charges. *State v. Taylor*, 2010 MT 94, 356 Mont. 167, 231 P. 3d 79, ¶¶ 1-5.

As to the first issue, Taylor argued that Montana should abandon the "bad faith" rule of *Arizona v. Youngblood*, 488 U.S. 51 (1988), in favor of a more forgiving standard.[1] The Court declined to apply plain error review and, in so doing, denied relief. *Id*. at ¶ 17. The Court noted that taking the approach Taylor urged would require overturning two well established separate state precedents: (1)

---

[1] Although the argument advanced by Taylor there dealt with the failure to have Jane Doe undergo a rape exam and not the failure to collect Taylor's fingernail scrapings as argued in the present petition, the claim Taylor made centered on the investigator's negligence and not bad faith. See, *State v. Taylor*, DA 09-0246, Appellant's Br. at 32-33 (filed Aug. 28, 2009)(available at: https://supremecourtdocket.mt.gov/search). It follows then, there was no argument that Detective Schalin acted in bad faith, but rather that his portion of the investigation was hamstrung by the lack of the rape exam of Jane Doe: "Although Schalin, a prosecution witness, would not go so far as to say his colleague made a mistake [in not conducting the rape exam], he was absolutely clear that he would have conducted the exam, that the other evidence he obtained was useless without the exam and that the exam could have detected whether there were massage oils in Jane Doe's vagina." *Id*. at 31.

that police officers have no duty to gather evidence on behalf of a defendant, and (2) that a defendant must demonstrate bad faith to establish a due process violation when the evidence is only potentially exculpatory. *Id*. The Court dismissed Taylor's second claim without prejudice because the Court deemed it to be more suitable for review in a postconviction proceeding. *Id*. at ¶ 22. The Court found that the trial court properly denied Taylor's motion for a mistrial. *Id*. at ¶ 25. Finally, in relation to Taylor's last claim, the Court held that Taylor failed to meet the standard regarding prejudice that would warrant severance. Taylor's vague speculation regarding the potential impact of the accumulated evidence was insufficient, thus, the trial court did not err. *Id*. at¶ 28.

### c. Post-Conviction

On June 25, 2010, Taylor filed a pro se petition for post-conviction relief wherein he alleged nine separate bases for relief. The Court appointed Taylor counsel, but due to a breakdown in the attorney-client relationship, counsel withdrew. The Court subsequently appointed a different attorney to work with Taylor. On February 7, 2013, Taylor filed an Amended Petition for post-conviction relief. (Doc. 8-25). In the Amended Petition, counsel highlighted the three strongest claims Taylor previously raised:

1) Trial counsel was ineffective for failing to move for a dismissal based on state's failure to gather material evidence- specifically, the fingernail scrapings and rape kit- and for failing to request a missing evidence instruction. (Doc. 8-25 at 4- 13);

2) Trial counsel was ineffective for failing to request a lesser included instruction (*id*. at 13-17);

3) The trial judge potentially impacted Taylor's right to a fair trial (*id*. at 17-19).

Ultimately, counsel moved to dismiss claim pertaining to the trial judge. *See*, (Doc. 8-27).

On April 23, 2013, a hearing on Taylor's post-conviction petition was held. Taylor's trial counsel, Jeff Olson, testified, as did Taylor himself. At the hearing, Taylor's post-conviction counsel focused on the two remaining issues that he had highlighted regarding the ineffectiveness of trial counsel: trial counsel (1) failed to move for a dismissal or request a missing evidence instruction based upon the State's failure to gather evidence and (2) failed to request a lesser included jury instruction.

Olson testified that during trial he questioned law enforcement as to the absence of a rape exam and that that line of questioning was important to the trial strategy to demonstrate to the jury that the police did not perform an adequate investigation. (Doc. 8-28 at 7:19-23; 8: 3)[2]. Olson also testified that based upon his trial preparation, there was no basis in Montana law to request an instruction relating to spoliation of evidence. *Id*. at 8: 8-12. Further, at the hearing, Olson

---

[2] For specificity, in relation to Doc. 28, the page numbers on the trial court's original condensed transcript, and not this Court's page numbers, are referenced herein.

testified that he chose not to pursue biological testing of some of the items seized into evidence, particularly the clothing of Jane Doe, because Taylor stated that during the massage he may have drooled onto the woman's body and that his saliva could have been transferred onto her clothing. *Id*. at 17-18. Olson felt that if testing were to reveal a transfer of biological matter, the jury would not be receptive to Taylor's explanation. *Id*. at 18. The defense's decision not to pursue further forensic testing was tactical.

Taylor testified that although he agreed to have his fingernail scrapings taken, none ever were. *Id*. at 36. Taylor contended that had scrapings been taken, they would have shown a lack of vaginal cells which would have proven he did not digitally penetrate Jane Doe. *Id*. at 36: 18-22. Taylor conceded that he washed his hands in the approximately sixteen hours that elapsed between the massage given to Jane Doe and his interview with law enforcement wherein he consented to the fingernail scraping. *Id*. at 37: 8-12. Likewise, Taylor contended that had police performed a rape exam, it would have disclosed the absence of massage oil in Jane Doe's vagina. *Id*. at 39-40.

The Court ruled from the bench denying all of Taylor's claims for post-conviction relief. As to two of the claims at issue here, the Court explained the denial. First, in relation to the ineffective assistance claim based upon trial counsel's failure to move for dismissal based upon state's failure to collect

fingernail scrapings/rape kit or request a missing evidence instruction, the Court noted that it was not established that the evidence in question had evidentiary value. It could have been inculpatory, exculpatory, or inconclusive. *Id*. at 64. Thus, trial counsel's decision not to file a motion to dismiss based upon Montana law was an objectively reasonable decision. *Id*. at 65. Further, there was no basis in Montana law for trial counsel to have requested a jury instruction on spoliation or missing evidence. *Id*. at 65. Police did not seize and then lose or destroy the evidence—it was never collected, and the evidence was only potentially exculpatory. It was a reasonable objective determination by trial counsel not to seek the instruction. Taylor failed to establish the first prong of deficient performance under *Strickland*. *Id*. at 65-6. The trial court did not address the second prejudice prong.

In the same vein, the Court determined that trial counsel was not ineffective for failing to file a motion to dismiss in relation to the failure to gather the same evidence. *Id*. at 66. Trial counsel argued there was reasonable doubt, in part based upon the lack of forensic evidence, and that tactical decision, in the Court's view, was consistent with the defense theory of the case. *Id*.

### d. Post-Conviction Appeal

On appeal, Taylor argued (1) trial counsel was ineffective for failing to file a motion to dismiss Count I on due process grounds based upon the State's failure to

collect potentially exculpatory evidence—specifically the rape kit exam of Jane Doe or Taylor's own fingernail scrapings and for failing to request a jury instruction on spoliation/missing evidence; (2) trial counsel was ineffective for failing to request a lesser included offense instruction[3]. In relation to his first argument, Taylor contended that Officer Hedges acted negligently by failing to conduct a rape exam of Doe and that the State denied him the ability to procure evidence he needed to prove his innocence by failing to take his fingernail scrapings and then placing him under arrest without advising him he had a right to obtain scrapings at his own expense. *Taylor v. State*, 2014 MT 142, ¶ 13, 375 Mont. 234, 335 P. 3d 1218.

The Montana Supreme Court affirmed the denial of Taylor's post-conviction petition. As to the lack of a rape kit exam or fingernail scrapings, the Court observed that police have no duty to gather exculpatory evidence. It was unlikely that a rape exam would have turned up material exculpatory evidence under the circumstances of the case. *Id*. at ¶ 17. The Court applied the same rationale to the fingernail scrapings and observed that Taylor told investigators he washed his hands after the massage. *Id*. At the postconviction hearing, Taylor did not establish that the officers impeded his ability to gather the fingernail evidence on his own, specifically the record did not reflect how long Taylor was in custody or

---

[3] Taylor has not raised the lesser included jury instruction issue in the present petition.

if it would have been an exercise in futility for him to attempt to collect the sample for testing on his own. *Id.* Therefore, Taylor had failed to meet his burden in the post-conviction proceeding and had failed to establish bad faith on the part of law enforcement.

Also, during the trial, defense counsel was able to capitalize on the lack of fingernail evidence and the rape kit exam to, in turn, argue that this failure was indicative of the lack of diligence exhibited in the overall investigation, supporting the defense's argument of reasonable doubt. *Id.* at ¶ 18. The Court held that, accordingly, trial counsel was not ineffective for either failing to request a dismissal or request a jury instruction relative to the spoliation of evidence.

## II.    Taylor's Claims

In the instant petition, Taylor raises the following claims:

1)    Trial counsel was ineffective for failing to move to dismiss the case on the grounds that police destroyed potentially exculpatory evidence in bad faith (Doc. 1 at 4, ¶ 14);

2)    Trial counsel unreasonably failed to request a jury instruction on missing evidence (*Id.* at 5, ¶ 13B);  and,

3)     Postconviction counsel was ineffective for failing to assert a claim that trial counsel ineffectively failed to object to prosecutorial misconduct in the closing argument.  (*Id.* at 7, ¶ 13C.)

## III.   Analysis

Determining whether an ineffective assistance of counsel claim has merit requires a federal court to examine the claim under *Strickland v. Washington*, 466

U.S. 668 (1984). A petitioner asserting ineffective assistance of counsel must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) counsel's errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687.

Under the first *Strickland* prong, whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687-88. A reviewing court's inquiry into the reasonableness of counsel's actions must not rely on hindsight. *Id.* at 689. Strategic decisions, such as the choice of a defense or which witnesses or other evidence to present, "are virtually unchallengeable" if "made after thorough investigation of law and facts relevant to plausible options." *Id.* at 690.

If a petitioner shows that counsel's performance was deficient, the next step in the *Strickland* inquiry is the prejudice analysis. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To satisfy the prejudice standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability" is defined as a "probability sufficient to undermine confidence in the outcome." *Id*.

Moreover, because the Montana Supreme Court decided Taylor's first two claims on the merits, the deferential standard of 28 U.S.C. § 2254(d) is at play. Under Section 2254(d), a state prisoner whose claim has been "adjudicated on the merits" cannot obtain federal habeas relief unless that adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See also Harrington v. Richter*, 562 U.S. 86, 98 (2011) ("By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2).").

A state court decision is "contrary" to clearly established United States Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases, 'or if it confronts a set of facts that is materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a result different from the Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

A state court decision is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," where the state court identifies the correct governing legal principle from the Supreme

Court's decisions, but unreasonably applies that principle to the facts of the Petitioner's case. *Williams*, 529 U.S. at 413. But, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' …and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 599 U.S.766, 773 (2010) (internal citations omitted). The standard is "'difficult to meet,'" and a "petitioner carries the burden of proof." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

**a. Claims 1 and 2**

As set forth above, both the post-conviction court and the Montana Supreme Court analyzed claims one and two together. In part, because the record was somewhat confusing relative to the seeming failure of Detective Schalin to collect Taylor's fingernail scrapings when viewed against his trial testimony, supplemental briefing was ordered on this issue. *See* (Docs. 19, 24, 25). Based upon his trial testimony, it appears that Detective Schalin either believed that fingernail scrapings were collected from Taylor, but were not tested, or was simply confused. Despite urging from Taylor, the Court does not find support for finding a more nefarious motive on the part of Detective Schalin. It is now clear based on

the record and the supplemental briefing, no scrapings were ever taken. Additionally, it is undisputed that none of the evidence that was collected in the case was sent away for forensic testing. Because Taylor has failed to overcome the deferential standards outlined at 28 U.S.C. § 2254(d), the decision of the Montana Supreme Court is to be afforded deference and Taylor should be denied relief on Claims 1 and 2.

*California v. Trombetta*, 467 U.S. 479 (2084) and *Youngblood* set the standard for establishing a due process claim arising from the failure to preserve evidence. In *Trombetta*, the Supreme Court held the preservation obligation is "limited to evidence that might be expected to play a significant role in the suspect's case." *Trombetta*, 467 U.S. at 488. The standard of constitutional materiality is met if the evidence at issue "possesses an exculpatory value that was apparent before the evidence was destroyed" and "must be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id*. at 489.

In *Youngblood*, the Supreme Court decided the state's responsibility is further limited when the defendant's challenge is to "the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 57. Thus, "unless a criminal defendant can show bad

faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process…" *Id*. at 58. Montana follows the rule of *Youngblood*. See e.g., *State v. Giddings*, 2009 MT 61, ¶ 48, 349 Mont. 347, 208 P. 3d 363 ("Where the lost evidence is only potentially exculpatory, rather than apparently exculpatory, the defendant must show bad faith by the State in order to establish a due process violation.").

Taylor did not establish that the fingernail scrapings had an apparent exculpatory value at the time he was taken into custody. At best, the scrapings held the potential to be useful, in the worst case for Taylor, the scrapings could have been inculpatory. In either case, the State was under no obligation to preserve the scrapings. As this Court noted, while at first glance it does seem odd that the Montana Supreme Court faulted Taylor for not seeking to preserve and test the scrapings on his own after being placed into custody, that assessment simplifies the analysis. Taylor failed to meet his burden in the post-conviction proceedings of establishing that the officers impeded his attempts to preserve the evidence. While it seems placing someone in custody would certainly impede such an attempt, the record is devoid of any evidence that Taylor insisted on having the scrapings taken or sought guidance on how to do so. Nor does the record reveal, as acknowledged by Taylor, how many days he was actually in custody before he was released on bond. *See* (Doc. 24 at 11, fn. 3).

Although Detective Schalin seemed poised to collect fingernail scrapings from Taylor, for some reason they were not collected. It appears that this decision could have come from someone above Schalin or as set forth above, been the result of a miscommunication. Schalin testified that the decision to forego performing a rape kit examination on Jane Doe was made by Detective Hedges and Sergeant Van Every. (Doc. 8-4 at 73:23-25.) Schalin's trial testimony also revealed that it was the Cascade County Attorney's Office who elected not to send the items that had been taken into evidence to the crime lab for testing. Presumably, because given the lack of a rape kit examination or buccal swab from Doe, there was nothing to test these items against. *See id*. at 74-75; 81. Regardless of the exact motivation, this Court is not convinced that the failure to collect the sample amounts to anything more than negligence, at most.

Furthermore, as revealed by Taylor's counsel during the post-conviction hearing, there was a reason that the defense did not push to have the items that had been seized and placed into evidence tested: Taylor had revealed to counsel that there was the potential that his DNA could have been found on some of the items. Buccal swabs were collected from Taylor, as was clothing from Doe. Thus, counsel made a reasonable and strategic decision not to push for the testing. Counsel also used the lack of testing to his advantage to argue that the investigation was inadequate and, thus, created reasonable doubt as to Taylor's

sexual contact with Doe. While the fingernail evidence was lost, a *Youngblood*-type motion may have well prompted testing of the remaining items, exactly what defense counsel did not want to do for fear of inculpating Taylor.

Thus, the Court cannot deem counsel to have been ineffective for failing to file a motion to dismiss when doing so could have resulted in the testing of evidence that would have had the potential to make the case worse for his client while simultaneously eliminating a main theory of the defense. Counsel made a reasonable strategic decision. *Strickland*, 466 U.S. 690. It was not ineffective for trial counsel to decide not move for dismissal of the prosecution based upon this failure to collect the fingernail scrapings or seek a jury instruction relative to the failure to collect the evidence.

Moreover, this Court agrees with the Montana Supreme Court that Taylor did not establish bad faith. Bad faith "consists of animus" or "a conscious effort to suppress exculpatory evidence." *Trombetta*, 467 U.S. at 488. "The presence or absence of bad faith by [law enforcement] for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood*, 488 U.S. at 56, n. **. While Taylor points to statements made by Detective Schalin in his interview of Taylor to support the his theory that Schalin knew of the exculpatory value of the scrapings, see (Doc. 24 at 5-6; 11-12), and a portion of Schalin's trial testimony

acknowledging the lack of forensic testing (*id*. at 7-8), further testimony given by Schalin at trial reveals that the apparent exculpatory value attached to the fingernail scrapings was essentially non-existent:

> Prosecutor: Later on during his interview, [Taylor] admitted he massaged her, right?
>
> Schalin: Yes.
>
> Prosecutor: So there was (sic) plenty of chances that her DNA might be on his fingernails; is that right?
>
> Schalin: Yes.
>
> Prosecutor: Would that have been very probative to send to the crime lab when everyone knew he had touched her.
>
> Schalin: I don't see any reason for sending it out.
>
> Prosecutor: Could you identify any investigative value for sending fingernail scrapings when all parties admitted he touched her?
>
> Schalin: No. It's totally not if he admitted to it, no.
>
> Prosecutor: There would be no reason to send them, right?
>
> Schalin: No reason.

(Doc. 8-4 at 84: 3-21.)

Because Taylor failed to show constitutional materiality or bad faith, there was no due process violation. Correspondingly, there was no deficient performance by counsel. Taylor has not established that the decision of the Montana Supreme Court was "contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Further, Taylor has not established that the Montana Supreme Court's decision was objectively unreasonable. Thus, the Montana Supreme Court should be afforded deference; Taylor is not entitled to relief on these two claims.

### b. Claim 3

Taylor acknowledges that he has never properly presented this claim to the state courts. (Doc. 1 at 7.) Although Taylor has not exhausted this claim, because there is no avenue available to present this claim to the state court, it is technically exhausted and will be deemed procedurally defaulted unless Taylor can demonstrate cause and prejudice to excuse the default. *See e.g.*, *Cooper v. Neven*, 641 F. 3d 322, 327 (9th Cir. 2011).

A petitioner does not have a federal constitutional right to effective assistance of counsel during state postconviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 554 (1987). *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), established a limited exception to this general rule, that only applies to Sixth Amendment ineffective assistance of counsel claims. *Martinez* held that inadequate assistance of post-conviction counsel or lack of counsel at initial collateral proceedings "may establish cause for a prisoner's procedural default of a

claim of ineffective assistance at trial." 132 S. Ct. at 1315. While Taylor's claim that post-conviction counsel performed ineffectively is not cognizable in habeas, it could potentially be used as an avenue to excuse the procedural default that has occurred.

In *Trevino v. Thaler*, the Supreme Court described the four-prong *Martinez* analysis as requiring the following: (1) the claim of ineffective assistance of trial counsel must be a "substantial" claim; (2) the "cause" consists of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding where the ineffective assistance of trial counsel claim could be brought; and (4) state law requires that an ineffective assistance of counsel claim be raised in an initial-review collateral proceeding, or by "design and operation" such claims must be raised that way, rather than on direct appeal. 133 S. Ct. 1911, 1918, 1921 (2013).

In previous cases, this Court has held that prongs 3 and 4 of this test are met in the state courts of Montana. See, e.g. *Miller v. Kirkegard*, CV-13-13-DWM, Or. re: *Martinez* (filed May 20, 2015). Thus, in order to proceed to the merits of this claim, Taylor needs to establish "cause" to excuse the default—i.e. that post-conviction counsel was ineffective, and also "prejudice" meaning that his claim of ineffective assistance of trial counsel for failing to object was a "substantial" claim.

Because Taylor cannot establish either prong, Claim 3 remains procedurally defaulted without excuse.

Taylor argues that the State improperly shifted the burden of proof to Taylor when he began his closing argument by stating the following:

> I ask you to consider and balance the detailed emotional testimony presented by each of the victims against the shallow one word denial offered by the Defendant. He didn't offer any explanation of how they could have been mistake or why they would have lied. Their accounts are packed with information. All he gave you was a surface denial.

(Doc. 1-1 at 10.) Taylor contends that this "burden shifting" continued into the rebuttal closing when the prosecutor commented again on Taylor's repeated one word denials in his interview and his failure to provide any credible account of why the sexual assaults did not happen. *Id*. at 10-11. Because trial counsel did not object or move for a mistrial in response to these arguments, Taylor believes he performed ineffectively. By not reviewing the trial transcript in detail and identifying this issue on postconviction, Taylor then asserts that postconviction counsel, likewise, performed ineffectively and, in doing so, created the procedural default. *Id*. at 11.

Taylor gave a three-hour interview to the investigators that was played for the jury during the defense's case in chief. Taylor also testified at trial. A review of both the recorded interview and Taylor's trial testimony reveals that he generally did provide one word denials to the accusations lodged against him. *See*

*e.g.*, (Doc. 1-2 at 2, 4, 5, 6, 8, 9); *see also* (Doc. 9, the DVD of Taylor's interview, filed conventionally with the Court). When Taylor testified at trial, on direct examination he gave one word responses to whether or not he inappropriately touched any of his three accusers during their massages. (Doc. 1-6 at 462: 8, 11, 14, 17, 18). Likewise on cross-examination, Taylor also gave brief, generally one word responses. *See* (Doc. 1-6 at 463: 21; 464:3, 6, 10, 13, 18; and, 465: 4, 7). Thus, the prosecutor's characterization of Taylor's responses as "one word" and "shallow" denials was a fair comment on the testimony and evidence that was presented to the jury. The comments from counsel were not improper. The cases upon which Taylor relies primarily involve a prosecutor's unlawful comment on an accused's silence. *See* (Doc. 1-1 at 11-12). Taylor has not shown that the prosecutor's comments deprived him of a fair trial, manipulated or misstated the evidence, or implicated other specific rights, such as Taylor's right to remain silent. *See Darden v. Wainwright*, 477 U.S.168, 181 (1986).

Taylor's argument that the burden was unfairly shifted is likewise unavailing. The jury was instructed that the closing arguments from counsel are not evidence. *See* (Doc. 8-3 at 178:16-17). The jurors were given an instruction that the State has the burden of proof. *See e.g.* (Doc. 8-4 at 467:24). Because the prosecutor's closing remark did not constitute objectionable misconduct, trial counsel cannot be deemed to have been ineffective for failing to raise a meritless

objection. By this same rationale, post-conviction counsel cannot be deemed to have been ineffective for failing to raise a meritless issue.

Because Taylor has not established that his claim is "substantial" meaning that is "has some merit," *Martinez*, 132 S. Ct. at 1318-19, or that his post-conviction counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" *Strickland*, 466 U.S. at 687, he cannot make the requisite showing under *Martinez* to set aside the procedural bar. Thus, the claim should be dismissed as procedurally defaulted.

## IV.    Conclusion

Because Claims 1 and 2 do not survive deferential review under 28 U.S.C. § 2254(d), the decision of the Montana Supreme Court should be afforded deference and these claims should be denied. To the extent that Taylor attempts to advance a claim of ineffective assistance of trial counsel in Claim 3, that claim is procedurally defaulted without excuse and should be dismissed with prejudice.

## V.    Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules governing § 2254 Proceedings. A COA should issue as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the

district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 648 (2012) (quoting *Slack*, 529 U.S. at 484).

In relation to his first two claims, Taylor has not made a substantial showing that he was deprived of a constitutional right; specifically that he was denied the effective assistance of trial counsel. There are no close questions and there is no reason to encourage further proceedings. Further, because Taylor has not demonstrated the requisite cause and prejudice under *Martinez* to excuse the procedural default of Claim 3, reasonable jurists would find no basis to encourage further proceedings. A certificate of appealability should be denied.

Based on the foregoing, the Court issues the following:

## RECOMMENDATION

1. Claims 1 and 2 should be **DENIED** because they do not survive deferential review under AEDPA;

2. Claim 3 should be **DISMISSED WITH PREJUDICE** as procedurally defaulted;

3.  A certificate of appealability should be **DENIED**.


**NOTICE OF RIGHT TO OBJECT
TO FINDINGS & RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT**

Mr. Taylor may object to this Findings and Recommendation within 14 days.[4]

28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo

determination by the district judge and/or waive the right to appeal.


DATED this 17th day of October 2016.


/s/ John Johnston
John Johnston
United States Magistrate Judge

---

[4] As this deadline allows a party to act within 14 days after the Findings and Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.